THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES )<br>)<br>v. )<br>)<br>ERNSO LOUIS )<br>)<br>  Defendant. )<br>_____ ) | Criminal No. 05-376-02 (JDB) |

**DEFENDANT'S MEMORANDUM IN AID OF SENTENCING**

**I.  Introduction**

The Defendant, through his undersigned counsel, respectfully submits this memorandum to aid the Court in the sentencing of Mr. Louis.  Mr. Louis requests the Court sentence him to a period of not more than 121 months.

**II.  Advisory Guideline Calculations[1]/Statutory Framework**

On July 27, 2006, Mr. Louis pled guilty to *Count One*, of an indictment charging him with Hostage Taking in violation of 18 U.S.C.§1203 (a).  There is no mandatory minimum.  The statutory maximum is life.

The guidelines base offense level for this offense is level 32 pursuant to U.S.S.G. §2A4.1(a).  There is a 6 level increase due to ransom demands, pursuant to U.S.S.G. §2A4.1(b)(1).  There is also a 2 level increase for the use of a weapon, pursuant to U.S.S.G. §§2A4.1(b)(3) and a 1 level increase pursuant to U.S.S.G.2A4.1(b)(4)(B), as the child was not released before seven days had elapsed.  Mr. Louis merits a 3 level

---

[1] These findings are not consistent with those included in the pre-sentence report.  The pre-sentence report upward adjusted Mr. Louis's base offense by two levels pursuant to U.S.S.G. §2A4.1(b)(2)(B).

reduction for acceptance of responsibility pursuant to U.S.S.G.§3E1.1(b).  No other upward or downward adjustments apply.  Mr. Louis objects to any increases pursuant to U.S.S.G. §2A4.1(b)(2)(B) for serious bodily injury.  Mr. Louis noted his objections to the pre-sentence writer.  The government concurs with Mr. Louis and does not believe the adjustment should apply.  The resulting total offense level is 38.[2]

Mr. Louis, as documented in the pre-sentence report has a criminal history category I.  As such the guideline range for a criminal history category I and offense level 38 is 235-293 months.[3]

## II.     Mr. Louis's Status as a "Deportable Alien" Warrants a Downward Departure

Mr. Louis is not a United States citizen, having been brought to the United States from his native country of Haiti, only for the purposes of facing the charges in this case.  Therefore, it is inevitable that he will be deported back to Haiti where he is from.

His status as a deportable alien will cause an increase in the severity of his confinement because he will almost certainly be ineligible for the benefits of 18 U.S.C. §3624.  Such section directs the Bureau of Prisons to assure that prisoners spend part of the last 10% of their sentences (but no more than six months) under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for his re-entry in the community."  In *United States v. Smith*, 27 F.3d 649 (D.C. Cir. 1994), the United States Appellate Court for the District of Columbia found that a downward departure from the recommended range under the Sentencing Guidelines may be appropriate where the

---

[2] See also plea, section 5, Sentencing Guidelines.
[3] The pre-sentence report calculates Mr. Louis's total offense level at 40, with a resulting guideline range of 292-365 months.

defendant's status as a deportable alien is likely to cause a fortuitous increase in the severity of his departure. *See also, Lartey v. Department of Justice,* 790 F.Supp. 130 (W.D. La 1992). As Mr. Louis is not a U.S. citizen and is deportable, he will not be afforded placement of less confinement during the last 10% of his sentence, and thereby will suffer an increase in the severity of his sentence solely based on his immigration status. A departure of six months is warranted to equalize his situation.

Additionally, Mr. Louis will most assuredly incur additional jail time while he awaits deportation. The American citizen after having completed the jail sentence will not be subject to additional incarceration for deportation proceedings and he or she will be able to resume his or her life as it had been before the incident.

### III.     Additional Sentencing Factors Pursuant to 18 U.S.C. §3553

Mr. Louis moves this court to sentence him to not more than 121 months. A sentence above that amount would be overly punitive, unreasonable, a waste of tax payer expenditure and is not warranted in this case. In conjunction and consideration of the other 3553(a) sentencing factors the court must take into account, such a sentence is reasonable.

A Court need not impose a sentence within the guideline range. *See United States v. Booker,* 125 S.Ct. 738 (2005). The United States Sentencing Guidelines now are advisory only. *Booker,* 125 S.Ct. at 756.

The Court must now consider the nature and circumstances of the offense and the history and characteristics of the defendant. See 18 U.S.C. §3553(a)(1). To not consider all the enumerated factors of 3553(a) at sentencing is tantamount to ignoring the *Booker* decision and makes the guidelines as binding as they were pre-*Booker*. This is a violation

of both the Sixth Amendment of the Constitution and the interpretation of Section 3553 adopted by the remedial majority in *Booker*.

(a) <u>Reflect seriousness of the offense and promote respect for the law, 18 U.S.C. §3553(a)(2)(A)</u>

Mr. Louis very quickly cooperated with law enforcement in this matter. Upon his arrest in Haiti, he assisted local and international law enforcement, acknowledging his role and involvement in the instant offense and providing law enforcement information regarding the other individuals involved. He was the first to be arrested. Additionally, upon his being brought to the United States he did not change his course of acknowledgment of wrong doing. He assisted the United States government and pled guilty in a timely matter. He accepts full heartedly the seriousness of this offense and he has done everything he can to promote respect for the law since his arrest by cooperating with government officials and accepting guilt.

(b) <u>Personal Characteristics of the Defendant</u>

Life in Haiti is very difficult for all but a very few. See co-defendant Yves Louis' arguments put forth on pages 5 and 6 of his Memorandum in Aid of Sentencing, listing statistics on Haiti and describing Haiti's economy. Although, Mr. Louis was working at the time of his arrest, he did not make enough money to support himself and he had to rely on what ever help his family could give him as well. Since his arrest, his family has not sent him any money as he explains his family has no money to send. Undersigned has sent him money so that he could try to contact his family.

Mr. Louis now finds himself in a foreign country, the United States. It is difficult for him to communicate with those around him. He feels very isolated as he does not speak English, hardly anyone speaks his native Creole, he does not know the culture and he has no friends or family he can easily reach out to. Therefore, incarceration for him, is ten times more difficult than for most others.

At times, Mr. Louis' incarceration has been a nightmare for him. In December 2005, Mr. Louis was attacked by a cellmate and chocked until he fainted. According to medical records, he had passed out in his cell before correction officers realized what was going on. The impact of his incarceration has caused him great emotional stress such that in 2006, he even tried to commit suicide by hanging himself with bed sheets. In March of 2006, he was found lying in his cell on the floor in blood. The pre-sentence report writer concludes that the blood was due to cavities he had in his mouth. In early June, another inmate punched him in the face. He was transferred to the hospital for treatment to his jaw. Later in June, mental health assessment found that "cultural differences continue to be the problem with the patient." At some point he was transferred to CTF, where he continues to complain about isolation from his family and his country.

(c) Deterrence, protection to the community and rehabilitiation

Kidnapping is a serious problem in Haiti.[4] Undersigned spoke with Haitian officials at the Embassy posted in Washington, D.C., and was told that kidnappings occur regularly in Haiti due to the dire economic situation of the people. Meaningful

---

[4] This is the second kidnapping case in Haiti by a Haitian that undersigned has been appointed to. The arrests occurred within one year of each other. In the other case, *United States v. Vava Pierre*, 06-125 (RBW), the defendant received a sentence of 108 months. His co-defendant, who did not receive a role enhancement was sentenced to 87 months. Those co-defendants did not cooperate.

deterrence to this type of crime in Haiti is only going to occur when economic conditions improve. Although, the United States has given the county a lot of money and has tried to assist to stabilize the country and the government, the situation does not improve. The imposition of lengthy sentences will have less of a deterrence impact then economic growth. Additionally, it appears that most kidnappings if they are prosecuted in Haiti, carry much gentler sentences than that to which the defendants here are faced with.

However, as to Mr. Louis, the impact of his incarceration to date has already been great. He has suffered and he will continue to suffer while he is incarcerated. He feels the pangs of punishment. He has done everything he can to make amends to this country and to his country. He has learned his lesson. This experience has already made a lasting mark, one which he will never forget.

## V.  Conclusion

**WHEREFORE**, for the above stated reasons, any other reasons presented during the sentencing hearing, and any other reasons this Honorable Court deems relevant, Mr. Louis respectfully requests this Honorable Court sentence him to not greater than 121 months.

Respectfully submitted,

_____
Elita C. Amato, Esq.
2009 N. Fourteenth Street
Suite 708
Arlington, VA  22201
703-522-5900
703-522-1250 fax.

6

## CERTIFICATE OF SERVICE

    I hereby certify that on this 5th day of December 2007, this Memorandum was filed electronically, thereby being served electronically on all parties.

_____
Elita C. Amato